**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

HENRY LANGER and
PATRICIA K. LANGER,
Plaintiffs,

v.

**ORDER**
01-1094(MJD/FLN)

UNITED STATES OF AMERICA,
Defendant.

---

Plaintiffs Henry Langer and Patricia K. Langer, et.al., pro se.

United States of America appearing by and on behalf of Katja Eichinger, U.S. Dept. of Justice.

---

This case is before the Court upon Defendant's Motion for Summary Judgment. Based on the foregoing, Defendant's motion is DENIED.

## BACKGROUND

The Plaintiffs, Henry Langer and Patricia Langer ("the Langers") filed a complaint in federal district court appealing the determination of a Collection Due Process ("CDP") hearing. The United States Government, ("the Defendant"), moves for summary judgment

## FACTUAL BACKGROUND

The following is a summary of the disputed and undisputed facts in this matter:

FILED 3-21-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(1.) I Care, Inc. rented office space in Henry and Patricia Langer's home in 1993 and 1994. (See Eichinger Decl., Ex.1; Langers' Second Stipulation, ¶4).

(2.) I Care, Inc., came into existence on January 1, 1984, and was dissolved sometime after January 1, 1996. (See Eichinger Decl., Ex.1, Langers' and United States' Second Stipulation, ¶4).

(3.) Patricia Langer was vice president and marketing director of I Care, Inc., including in 1993 and 1994. (See Eichinger Decl., Ex. 1; Langers' and United States' Second Stipulation, ¶2).

(4.) Patricia Langer was a 39 percent shareholder in I Care, Inc. (See Eichinger, Decl. Ex. 1, Langers' and United States' Second Stipulation, ¶3).

(5.) Henry and Patricia Langer filed joint federal income tax returns for the years 1993 and 1994. (See Eichinger Decl., Ex.2, Form 1040 Joint Federal Income Tax Returns for Henry and Patricia Langer for 1993 and 1994).

(6.) On their joint income tax returns for 1993 to 1994, the Langers reported rental income from I Care, Inc. in the amounts of $31,576.34 for 1993 and $38, 656.70 for 1994. (See Eichinger Decl., Ex. 2, 1993 Form 1040, 1.18; 1994 Form 1040, 1.17).

(7.) The Defendant states that the IRS found the rental income paid by I Care, Inc. to the Langers to be excessive and reclassified some of the amount as wage income to Patricia Langer. (citing Eichinger Decl., Ex. 3, Schedules for FICA Tax Adjustment of Wages Not Previously Reported for 1993 and 1994; Ex. 4, Langers' and United States' Second Stipulation, ¶¶2-6). The Langers dispute this fact. They

state that the IRS's characterization was inconsistent between the employment tax audit, the corporate audit and the plaintiff's audit. (citing Pl.'s Ex. 17).

(8.) The Langers do not dispute the fair rental value determination for the office and equipment rental by the Langers to I Care, Inc. for 1993 and 1994, as determined by the Internal Revenue Service. (See Eichinger Decl., Ex. 4, Henry and Patricia Langers' and United States' Stipulation at ¶2).

(9.) Because of the excessive amount of rental income claimed by the Langers in 1993 and 1994, the IRS determined that Patricia Langer received additional wage income in the amounts of $21, 532.60 for 1993, and $35, 103.80 for 1994. (See Eichinger Decl., Ex. 3, Schedules for Tax Adjustment of Wages Not Previously Reported for 1993 and 1994, Ex. 4, Langers' and United States' Stipulation at ¶¶2-6; Ex. 1, Langers' and United States' Second Stipulation at ¶11.)

(10.) The Langers do not dispute the IRS's determination during the employment tax audit for 1993 and 1994 that income amounts for 1993 and 1994 were reclassified from rental income to wage income to Patricia Langer in the amounts of $21, 532.60 for 1993, and $35, 103.80 for 1994. (See Eichinger Decl., Ex. 4, Langers' and United States' Stipulation at ¶3).

(11.) The IRS sent the Langers a Notice of Deficiency dated May 20, 1997, with an attached revenue agent report that addresses the FICA taxes at issue in this case. (See Eichinger Decl., Ex. 11, Notice of Deficiency dated May 20, 1997).

(12.) The Defendant states that on June 9, 1997, the Internal Revenue Service assessed additional FICA taxes against Patricia Langer for 1993 in the amount of $1,

647.24, and for 1994 in the amount of $2, 685.44. (citing Eichinger Declaration, Ex. 4, Henry and Patricia Langers' and United States' Stipulation at ¶1; Ex.5, Certificates of Assessments and Payments for 1993 and 1994 in the amount of $2,685.44; See also Eichinger Decl., Ex. 7, Motion to Dismiss for Lack of Jurisdication, United States Tax Court Case Docket No. 106300-00-L, and attached William R. Glover Aff.). The Langers dispute this characterization. Rather, they state that on June 10, 1997, plaintiffs receive a Notice of Form 1040 liability from the IRS-KC for tax periods December 31, 1993 and December 31, 1994 stating: "The change(s) below resulted from an examination of your tax return (Form 1040) shown above." (citing Pl.'s, Ex. 5).

(13.) The Defendants state that the IRS sent Henry and Patricia Langer statement of account letters for the 1993 and 1994 FICA tax assessments on June 9, 1997. (citing Eichinger Decl., Ex. 12, Statement of Account letters dated June 9, 1997). The Langers dispute this characterization. They state that on June 10, 1997, they received a Notice of Form 1040 Liability from the IRS-KC for tax periods December 31, 1993 and December 31, 1994 stating: "the changes(s) below resulted from an examination of your tax return (Form 1040) shown above." (citing Pl.'s Ex. 5).

(14.) The additional FICA tax liabilities assessed by the IRS were based on the reclassification of rental income to wages to Patricia Langer of $21,532.60 for 1993, and $35,103.80 for 1994. (See Eichinger Decl., Ex. 4, Langers' and United States' Stipulation at ¶3-4).

(15.) Henry and Patricia Langer do not dispute the correctness of the amounts of $21,532.60 for 1993, and $35, 103.80 for 1994, which were reclassified as wages to Patricia Langer. (See Eichinger Decl., Ex. 4, Henry and Patricia Langer's and United States Stipulation at ¶5).

(16.) The Langers also do not dispute the correctness of the amounts of the FICA tax liabilities of $1,647.24 for 1993 and $2,685.44 for 1994 assessed against Patricia Langer due to the reclassification of rental income as wages to Patricia Langer. See Eichinger Decl., Ex. 4, Langers' and United States' Stipulation at ¶6).

(17.) The Langers have stipulated that they will not assert in this lawsuit that the payments made to Patricia Langer by I Care, Inc. in the amounts of $21,532.60 for 1993 and $35, 103.80 for 1994 that were listed as rental income on the Langers' tax returns for those years and reclassified by the IRS as wage income to Patricia Langer, was not wage income to Patricia Langer. (See Eichinger Decl., Ex. 1, and Langers' and United States' Second Stipulation at ¶11).

(18.) The Langers allege that the IRS did not follow proper procedures in assessing the liabilities at issue in this lawsuit. (See Eichinger Decl., Ex.1, Langers' and United States' Second Stipulation at ¶12).

(19.) The Langers allege that the IRS did not send a notice of proposed deficiency (30-day letter) regarding the FICA tax liabilities assessed against Patricia Langer. The IRS admits that it did not send a 30-day letter for the 1993 and 1994 FICA taxes at issue in this case.

(20.) The Langers settled a related United States Tax court case, concerning income tax liabilities for 1992, 1993 and 1994, by stipulated decision dated April 8, 1998. (See Eichinger Decl., Ex. 24, Langer v. Commissioner, Docket No. 16633-97 (Apr. 8, 1998); Ex.9, Henry Langer Dep., p. 25, ¶ 5-25 to p. 26, ¶1-17).

(21.) The IRS issued a Notice of Intent to Levy on September 10, 1999. After Notice of Intent to Levy, the Langers sought review under Section 6330 asking for a CDP hearing before an IRS Appeal's Officer. (See Eichinger Decl., Ex. 8, Final Notice of Intent to Levy dated September 10, 1999; Ex.5, Certificates of Assessments and Payments for 1993 and 1994. See also, Fed. R. Civ. P. 26 (f) report, ¶(a)(1), Concise Factual Summary of Plaintiffs' Claims; Eichinger Decl., Ex. 7, Motion to Dismiss for Lack of Jurisdiction, United States Tax Court Case Docket No. 10630-00-L, and Attached Aff. of William R. Glover).

(22.) The Langers and the IRS attempted to resolve the FICA tax issue as part of the CDP hearing. (See Eichinger Decl., Ex. 9, Henry Langer Dep. at p.36, ¶25 to p.37, ¶1-24; Ex. 10, Notice of Determination dated Sept. 15, 2000).

(23.) The CDP hearing was not conducted in person, but was mostly conducted by letter and telephone. (See Eichinger Decl., Ex. 9, Dep. of Henry Langer at p. 37, ¶1-24; Ex. 10, Notice of Determination dated September 15, 2000).

(24.) On September 15, 2000, the IRS Appeals Officer issued a notice of determination concluding that the Notice of Intent to Levy had been properly issued to the Langers, that Patricia Langer is liable for the employee share of the FICA tax, and

that Section 530 of the Revenue Act of 1987 does not apply. (See Eichinger Decl., Ex. 10, Notice of Determination dated September 15, 2000).

(25.) The Langers filed their complaint with this Court challenging the IRS Appeals Officer's determination on June 18, 2001.

In the Complaint, the Langers plead that the Appeals Officer erred in (1) determining the assessment of FICA tax liabilities to Patricia Langer to be a valid assessment; (2) the proper assessment of the liability; (3) determining the plaintiff is subject to the employee share of FICA tax on a portion of payments made to her for her benefit, and (4) in not considering the relief provisions of §530 of the revenue act of 1978. (Compl. at ¶4).

## SUMMARY OF ARGUMENTS

In the Complaint, the Langers plead that the Appeals Officer erred in (1) determining the assessment of FICA tax liabilities to Patricia Langer to be a valid assessment; (2) determining the liability to be properly assessed; (3) determining the plaintiff is subject to the employee share of FICA tax on a portion of payments made to her for her benefit, and (4) in not considering the relief provisions of §530 of the revenue act of 1978. (Compl. at ¶4).

The Defendant argues that Patricia Langer remains responsible for the unpaid employee's portion of the FICA tax liabilities, which were not paid by I Care, Inc. It further argues that the procedural deficiencies alleged by the Langers do not change the fact that excess rental income is properly treated as wage income, which is subject to FICA tax; that FICA taxes for 1993 and 1994 were

properly assessed, and were not subject to the deficiency procedures of IRC §6212. The Defendant contends that the Langers were aware of assessments, were given a basis for the assessments, and that inconsistent treatments do not invalidate the assessments. Lastly, the Defendant argues that a June 30, 2002 letter that the Langers received from their appeals officer stating, "I don't believe any additional information will be made available to me before I complete consideration of the case causing me to gather this information," (Pl.'s Ex. 18), does not indicate that the IRS lacked sufficient information to make a determination regarding the FICA tax assessments for 1993 and 1994.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celeotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The moving party bears the initial burden of identifying evidence, which demonstrates the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct. at 2552. Once that burden is met, the non-moving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party then bears the burden of setting forth specific facts showing that there is evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, the Court is required to resolve all conflicts

of evidence in favor of the non-moving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). This notwithstanding, in order to defeat summary judgment when a properly supported motion for summary judgment is made, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## STANDARD OF REVIEW

The Langers appeal a determination of a CDP hearing that Patricia Langer is liable for the employee portion of FICA taxes for 1993 to 1994. Where the underlying tax liability is at issue, the Court reviews the Commissioner's determination *de novo,* otherwise the Court reviews for abuse of discretion. MRCA Info. v. United States, 145 F.Supp.2d 194, 199 (D.Conn.2000). Therefore, the Court reviews the record on a *de novo* basis.

## DISCUSSION

### I. Validity of the Assessment.

In their Complaint, the Langers assert that their assessed tax liabilities for the years 1993 in the amount of $1,657.24 dollars and 1994 in the amount of $2,685.44 was improperly assessed (Compl. ¶4). The Langers base their contention on a series of alleged procedural errors and argue that the assessment was incorrectly assessed as a Form 1040 tax liability. (Compl. at 3, ¶f-h).

Defendant moves for summary judgment on the Langers claim that the assessment was invalid. They argue in part, that the 30-day letter and other procedural or administrative deficiencies are insufficient to render the FICA assessment invalid. In

particular, the defendant argues that a 30-day letter is a procedural regulation under Section 601.105(d) of the Treasury Regulations and is meant to encourage settlement. §601.105(d)(1)(iv); Smith v. U.S., 478 F.2d 398, 400 (5th Cir. 1973). The Courts have found that a failure to issue a 30-day notice is procedural and not so severe as to take away a taxpayers appeal rights nor render a notice of deficiency invalid. See, e.g., Montgomery v. Commissioner, 65 T.C. 511 (1975).

The Defendant also contests the Langer's claim that the Disposal Code of 08 indicates that the assessment was a 1040 liability. The Defendant argues that disposal codes are two digit codes used by the IRS examination division to indicate the disposition of an examination. Here, the Defendant concedes that this code should be used for FICA tax assessments as proscribed in the Internal Revenue Manual, Chapter 4.104.3.10.3(1). That provision states that the agent should "process the FICA tax adjustment as a partial assessment using Disposal Code 08 without an agreement date entry, [sic] Disposal Code 08 is used since the 30 day interest free waiver period is not applicable to FICA tax and interest is computed to the payment date or 23C date, whichever is earlier." (Id., Def.'s Exs. 14, 15). The Defendant argues however, that a failure to use the disposal code does not render the assessment invalid because the Internal Revenue Manual, is an administrative housekeeping document which creates no substantive rights. United States v. Caceres, 440 U.S. 741, 756 (1979).

In addition, the Defendant anticipate that the Langers will argue that the assessment is invalid because the IRS incorrectly used a "MFT 30" denotation when entering the FICA liabilities on its computer system. The Defendant states that the "MFT 30" code is used in

the computer system to denote that the FICA liability is an individual and not a business liability. (See Eichenger Decl., Ex. 18, William R. Glover Decl.). They argue that the way FICA tax liabilities are entered into the computer, like the disposal code, is merely a matter of administrative housekeeping and does not alter the validity of the assessment. See United States v. Caceres, 440 U.S. 741, 756 (1979).

In response, the Langers maintain that their tax was not properly assessed as a FICA tax assessment. Rather, the Langers received a Notice of Form 1040 liability for the assessment. Thus the Langers contend that the assessments were improperly made as Form 1040 tax liability rather than a FICA tax liability, and, as such were improperly assessed. (Pl.'s Mem. Opp. Summ. J. at 8).

The Court concludes that the Defendant has not carried its burden on the validity of the assessment issue. The Defendant has provided evidence that the absence of such administrative housekeeping matters of the disposal code and the 30-day letter are not alone sufficient to invalidate an assessment. However, here, the Langers appear to assert that the absence of these administrative events alone do not invalidate the assessment, but rather, are facts probative of their underlying claim: that the IRS improperly assessed their tax liability as 1040 liability income rather than as FICA tax liability.

Despite the Defendant's extensive briefing, it has failed to address the crux of the Langer's Complaint. The Langers have provided on the record that their FICA liability was assessed as 1040 income liability. In particular, the Langers produce deficiency notices indicating that the amount what the IRS claims are FICA tax liabilities were Form 1040 liabilities. (See Pl.'s Exs. 5-9).

Further, a substantial portion of the Henry Langer's deposition testimony was dedicated to his position that the FICA tax was actually assessed as a 1040 liability. (See Henry Langer Dep., Def.'s Ex. 9). The Defendant has not addressed the Plaintiff's deposition testimony regarding whether the FICA taxes were actually assessed as 1040 liability assessments. The deposition testimony states in relevant part:

> Q: . . . You said on June 9, 1997, "the tax liability was assessed however, plaintiff's petition to the United States Tax Court was not due until August 1997.
> A: Correct.
> Q: Did you say that's why the assessment is not valid also?
> A: No. I'm just indicating the reason the tax—the tax liability is the way it was assessed, based on the documentation that I have. And a 1040 liability cannot be assessed before a taxpayer has their opportunity to litigate in United States Tax Court.
> Q: Let me rephrase that and you tell me if I understand you correctly. You're saying that FICA tax liability was actually assessed as an income tax liability, and since it was assessed as an income tax liability statute it cannot be—go after the taxpayers until it is contested in tax court; correct?
> A: I didn't know it was purported to be a FICA liability until after I settled my tax court petition. On June 9 of 1997, I had no idea it was an FICA liability.

(Id. at 24, ¶9 to 25, ¶8).

Further:

> Q: Do you know, we're back to the report—the 26(f) go to page three, and there you state that "The assessments are, and additional liability for FICA tax, assessed as a form 1040 tax liability." Explain to me what evidence or documents you have to support that contention?
> A: The notices from the Internal Revenue Service Center in Kansas City, the erroneous levies that were filed on my bank accounts, all indicate that to be a form 1040 tax liability.
> Q: How do they indicate that; what part of them shows it's a 1040 liability?

> A: The documents included with my initial discovery, I don't have them at my disposal, where it talks about the tax liability, it's form 1040. The letter from the service center that initially represented the liability, said the liability resulted from the examination from our individual 1040 tax returns. It was also a 1040 liability when the revenue officer had to have that liability removed, so the correct 1040 liability could be assessed that was agreed to when we settled our '92,3, 4 audits.
> A: Do you have any other documents or any other evidence that you contend that shows that the assessment for the FICA tax were actually assessed as a form 1040 liability?
> A: Every document that came out of the service center and the documents that the revenue officer relied upon when he had a bait that 1040 liability so he could assess the proper 1040 liability, all indicate it to be a form 1040 liability. There was not a document from the service center that has been provided to me by the government that indicates that it's an FICA liability.

(Id. at 27, ¶25 – 29, ¶9).

Since the Langers claim is essentially that the FICA taxes were incorrectly assessed as 1040 liability, the Defendant, in order to prevail on its summary judgment motion must address that issue and demonstrate that there are no issues of material fact that a jury could consider. While the Defendants have addressed at length the 30-day letter, the disposal code, and the "MFT 30" denotation, it has not reached the greater alleged irregularity: the fact that the notices Plaintiff received characterize the tax as a 1040 income liability. Arguing that the FICA assessment is not invalidated by the absence of certain indicia of a FICA tax assessment is insufficient to overcome the genuine issues of material fact regarding the assessment that the Langers have pointed to on the record. Thus, the Court finds that summary judgment is not appropriate.

Further, the Defendants additional arguments in their Motion of Summary Judgment rely on the presumption that the FICA tax was properly assessed. As the

Court has concluded that issues of material fact exist as to whether the FICA tax assessment was validly assessed in the first instance, the Defendant's additional arguments for summary judgment will not be examined by the Court.

Based on the foregoing and all files, papers and proceedings herein,

IT IS HEREBY ORDERED that,

1.) Defendant's motion for summary judgment (Docket No. 25) is DENIED.

Date: March 20, 2003

Michael J. Davis
United States District Court